UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**WILLIAM McLOUGHLIN**, **SOVAIRA MALL**,
Individually and on behalf of their
**MINOR CHILD DM**
      Plaintiffs

               *CIVIL CASE NO.:* 1:18-CV-487[LEK/CFH]
               CIVIL RIGHTS COMPLAINT, PURSUANT
               42 U.S.C. SECTION 1983

-against-

**RENSSELAER COUNTY DEPARTMENT OF SOCIAL SERVICES**(hereinafter "RCDSS")
**MEGAN GOLDEN** (in her individual and official capacity as caseworker at RCDSS)
**JENNIFER ROSENGART**(  (in her individual and official capacity as Supervisor at RCDSS)
**JOHN DOE** (In his or her respective individual & official capacities, with fictitious names intended to represent City of Rensselaer employees, County of Rensselaer employees, or State of New York employees, who may have been involved in the incidents that violated plaintiffs federal rights, but whose real names, precise number, and level of involvement are currently unknown to plaintiff)
      Defendants.
_____

   *Plaintiffs demand a trial by **JURY***

Plaintiffs in the above captioned action allege as follows:

## JURISDICTION

This is a civil action seeking relief and damages to defend and protect the rights guaranteed by the Constitution and Laws of the United States.  This action is brought pursuant to 42 U.S.C. Section 1983.  The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331, 1343(3) and (4) and 2201.

## INTRODUCTION

1. This is an action at law to redress the deprivation by defendants, acting under color of statute, ordinance, regulation, custom and/or usage, of a right, privilege or immunity secured to plaintiffs by the Constitution and Laws of the United States of America.

2. The essence of this lawsuit can perhaps be summarized by the written decision-after-hearing

issued by New York State Bureau of Special Hearings (Cheryl E. Cullen), which read in pertinent part:  *"That the Agency[RCDSS] conducted an emergency removal of [DM] from the Appellants' care under the circumstances presented herein is troubling.  The Appellants had an absolute right to make the decision not to expose their three(3) month old son to the high levels of radiation associated with the CT scan.  This is especially true considering it was a medical doctor who advised them that it was unnecessary to expose the child to those levels of radiation given that he was presenting as clinically well.  It is significant that Dr. Hogan specifically testified that David was not placed at imminent risk of harm by the decision to observe him rather than to perform the CT scan."*

## PARTIES

### PLAINTIFFS

1. Plaintiff, WILLIAM MCLOUGHLIN is a White Caucasian citizen of the United States, and is the father of the co-plaintiff/minor child, DM

2. Plaintiff, SOVAIRA MALL is Pakistani, a resident of the State of New York, and is the mother of co-plaintiff/minor child, DM

3. Plaintiff DM was at all times herein relevant, a three(3) month old minor child citizen of the United States.  Plaintiff DM is a mixed-race child, comprising of Pakistani and Caucasian race.  At all times herein relevant, plaintiff DM was in the legal and physical custody of his parents Sovaira Mall and William McLoughlin, except for the illegal interference of that custody by defendants as hereinafter alleged.

### DEFENDANTS

4. Defendant, RCDSS is a municipal corporation organized under the laws of the State of New York.  At all times herein relevant, defendant RCDSS, was responsible for the policy, practice,

supervision, implementation, and conduct of all RCDSS matters.  RCDSS was also responsible for the appointment, training, supervision, discipline, retention, and conduct of all RCDSS personnel.  Furthermore, at all times herein relevant, defendant RCDSS was responsible for enforcing the rules of RCDSS, and for ensuring that RCDSS personnel obey the Laws of the United States and the Laws of the State of New York.  RCDSS has its principal administrative office at 127 Bloomingrove Drive, Troy, New York 12180 .

5. Defendant MEGAN GOLDEN (hereinafter "Golden") is at all times material hereto, duly appointed by, employed by, and acting as employee, agent, and servant of defendant RCDSS.  She is being sued herein in both her official and individual capacity.  Upon information and belief, defendant Golden is a White-Caucasian female.   Golden's principal place of business is 127 Bloomingrove Drive, Troy, New York 12180.

6. Defendant JENNIFER ROSENGART (hereinafter "Rosengart") is at all times material hereto, duly appointed by, employed by, and acting as employee, agent, and servant of defendant RCDSS as a supervisory employee over defendant Golden.  She is being sued herein in both her official and individual capacity.  Rosengart's principal place of business is 127 Bloomingrove Drive, Troy, New York 12180.

7. The individual acts of each of the individual defendants alleged herein were done by the individual defendants, and each of them, under color of law, to wit: under the color and pretense of statutes, ordinances, regulations, customs, policies and usages of the State of New York and the County of Rensselaer.

## THE FACTS

8. On or about April 21, 2015, at approximately 10:30pm., plaintiff McLoughlin took three (3) month old plaintiff DM to the basement of their home so that McLoughlin could carry on with the household laundry.  McLoughlin placed D.M on his back, on top of the dryer, while he was

removing clothes from the dryer.

9. In a matter of seconds, plaintiff DM kicked and slid off of the dryer.  As he fell, plaintiff DM hit a table which was approximately one foot away from the dryer and six inches lower than the dryer breaking his fall.  He then fell to the floor.  The floor was approximately two and one half to three feet from the top of the dryer.

10. Plaintiff DM was crying.  He had a bump on his head and scrapes on his nose, knuckles, and knees.  Plaintiff McLoughlin brought plaintiff DM back upstairs and gave him a shower to calm him down.  Giving plaintiff DM a shower had worked in the past to calm DM down when he is upset.

11. Plaintiff DM calmed down and was not exhibiting any signs of distress.  Plaintiff McLoughlin's father, William K. McLoughlin, Sr. (hereinafter "McLoughlin Sr.") lived in the apartment on the first floor of the same building where the plaintiffs resided.  At approximately 10:50p.m., plaintiff McLoughlin brought plaintiff DM to McLoughlin Sr.'s apartment.  McLoughlin Sr. checked plaintiff DM and, seeing no signs of distress and observing that DM was smiling and happy, told plaintiff McLoughlin that he believed plaintiff DM was fine.  Plaintiff DM stayed with McLoughlin Sr. while plaintiff McLoughlin picked plaintiff Mall up from work.

12. At approximately 11:15p.m., plaintiffs McLoughlin and Mall arrived home, and after examining plaintiff DM, plaintiff Mall decided to call the pediatrician's office.  The call was placed and the plaintiffs waited for the call to be returned.

13. The on-call service eventually returned plaintiffs' call and recommended that plaintiff McLoughlin and Mall take plaintiff DM to the emergency room to be examined.

14. At approximately 12:10a.m., the plaintiffs arrived at Albany Medical Center.  Plaintiff DM was examined by resident physician Jason Adam Jacque, M.D. (hereinafter "Dr. Jacque"). Dr.

Jacque observed <u>a small bump</u> on plaintiff DM's head.  Other than the small bump, plaintiff DM appeared normal.  Plaintiff DM was also responsive and not lethargic.  According to Dr. Jacque, "he did not observe any physical or behavioral signs that caused concern."

15. Dr. Jacque told the plaintiffs that <u>he would not recommend that plaintiff DM undergo a CT scan</u>.  Instead, Dr. Jacque recommended that plaintiff DM be held for observation.  Dr. Jacque explained that the exposure to the high levels of radiation associated with the CT scan could be harmful to plaintiff DM and could cause cancer.

16. Dr. Jacque further conferred with the on-call physician from plaintiff DM's pediatrician's office, Dr. Kroopnick.  Dr. Kroopnick was in direct communication with Dr. Jacque and both doctors were in agreement that the child was clinically well and that the appropriate plan was for the child to be held for observation for at least four(4) hours, unless there was a change in DM's clinical status.

17. Attending physician, Kathryn A. Hogan, M.D. (hereinafter "Dr. Hogan") reviewed plaintiff DM's case with Dr. Jacque.  Although Dr. Hogan initially recommended a CT scan to determine if there were internal injuries, she agreed with Dr. Jacque and Dr. Kroopnick that given plaintiff DM's appearance and behavior, observation was an appropriate option, but agreed that if the child's condition deteriorated however, a CT scan may become necessary.  If DM's condition did not deteriorate, the CT scan <u>would not</u> be necessary.

18. The medical treatment plan was to observe plaintiff DM for six hours and, if his condition did not deteriorate, he could be discharged.

19. At some point during these events, a call was placed to the New York State Central Abuse Register, and a suspected child abuse report was made and assigned to child protective services caseworker, Meagan Golden (defendant Golden).

20. Upon arriving at the hospital, Golden informed plaintiffs that plaintiff DM needed a CT scan. The plaintiffs explained to defendant Golden that the doctors had already determined that a CT scan was not necessary unless plaintiff DM's condition deteriorated. Plaintiffs further explained that the doctors had agreed to observe plaintiff DM for a six hour period.

21. Defendant Golden went on to insist that the child, plaintiff DM must have a CT scan.

22. Upon defendant Golden's continued insistence and threat to plaintiff-parents McLoughlin and Mall that she would remove plaintiff DM from their care and custody if plaintiff-parents continued to withhold their consent to the CT scan, plaintiff Mall succumbed to defendant Golden's threat, and agreed to provide her consent to the CT scan.

23. Nevertheless, defendant Golden proceeded to remove plaintiff DM from the care and custody of his parents, plaintiffs McLoughlin and Mall, on the basis that "plaintiffs refused to consent to a CT scan of plaintiff DM".

24. According to defendant Golden, she also had a telephone conversation with her supervisor (defendant Rosengart) prior to the removal, who in turn accented to the removal of DM.

25. Upon the removal of plaintiff DM from the care and custody of the parents-plaintiff's McLoughlin and Mall, defendant Golden herself gave the medical consent to plaintiff DM undergoing a CT scan.

26. The results of the CT scan were negative, showing that plaintiff DM had not sustained any internal injuries or fractures. This result clearly showed what the parents-plaintiffs and treating physicians had believed and recommended in their professional capacity, to wit: a CT scan is unnecessary and could in fact pose significant long term damages to the infant child under the circumstances.

27. Against the express direction and prescription of the treating physician, defendant Golden

substituted the medical and professional judgment of the treating physicians with her own judgment.

28. Upon information and belief, defendant Golden is not a qualified physician nor a qualified medical professional.

29. Even though defendant Golden represented to plaintiffs that the reason for the removal of DM was because plaintiffs McLoughlin and Mall would not consent to a CT scan, defendant Golden still proceeded to place DM with foster parents/strangers, even after Golden authorized the CT scan, and the result of the CT scan tested negative.

30. Throughout this ordeal, plaintiffs McLoughlin and Mall observed that defendant Golden exhibited certain negative behavioral gestures that were condescending towards plaintiff Mall.

31. Upon information and belief, defendant Golden's unfavorable treatment of all of the plaintiffs was motivated by defendant Golden's racial animus and bias against plaintiffs Mall and DM as Pakistani and Bi-racial respectively.

32. Upon information and belief, defendants do not treat similarly situated White/Caucasian members of the community as unfairly as they treated plaintiffs in this case.

33. Without the consent of any of the parent/plaintiffs, defendant Golden, Rosengart, and RCDSS proceeded to remove plaintiff DM and take him away from his home, and from the loving care and custody of his parents for approximately 3 days and 3 nights, beginning from April 21, 2015 through April 24, 2015.

34. Furthermore, on or about April 22, 2015, defendants Golden, Rosengart, and RCDSS, without legal justification filed an "indicated report" of child abuse with the New York State Child Abuse Registry, against plaintiffs McLoughlin and Mall.

35. At the time of the defendants' filing of the aforesaid "indicated report," plaintiff McLoughlin

was employed by the New York State Department of Victim Services, and also served as a volunteer coach for a little league baseball and basketball team.

36. Plaintiff McLoughlin was informed by his employer and the Board of the establishments where he volunteered that if they ever received a child abuse "indicated report" from New York State Child Abuse Registry against him, his employment could be terminated, and he would also be terminated from his coaching positions.

37. On or about May 23, 2016, plaintiffs McLoughlin and Mall requested an administrative hearing of the "indicated report" pursuant to *SSL § 422(8) and Valmonte v. Bane, 18 F3d 992 [2d Cir 1994]*.

38. After the close of evidence at the Administrative Fair Hearing, by the decision-after-hearing of Cheryl E. Cullen, NYS Bureau of Special Hearings, an order was issued therefrom directing that the said "indicated report" be amended to "unfounded".

39. This decision illustrates the absurdity of the conduct of these defendants, when it recited part:

> *That the Agency[RCDSS] conducted an emergency removal of [DM] from the Appellants' care under the circumstances presented herein is troubling. The Appellants had an absolute right to make the decision not to expose their three(3) month old son to the high levels of radiation associated with the CT scan. This is especially true considering it was a medical doctor who advised them that it was unnecessary to expose the child to those levels of radiation given that he was presenting as clinically well. It is significant that Dr. Hogan specifically testified that David was not placed at imminent risk of harm by the decision to observe him rather than to perform the CT scan."*

In another part, the decision read as follows:

> "There is no allegation that Appellant McLoughlin intended to harm [DM]. By all

*accounts, Appellant McLoughlin is a loving, caring and attentive father. He is, however, a first time, inexperienced father. The incident presently under review was simply an unfortunate accident."*

40. It is therefore abundantly clear that defendants failed to act in good faith and had no legal basis for the removal of plaintiff DM from the loving care and custody of his plaintiff-parents.

41. It is also abundantly clear from the NYS Bureau of Special Hearings' decision- after hearing that the defendants failed to act in good faith and had no legal basis to file an "indicated report of child abuse" against plaintiffs McLoughlin and Mall.

42. Upon information and belief defendant Rosengart approved and ratified each and every unlawful act of defendant Golden as set forth above.

43. Upon information and belief defendant RCDSS approved and ratified each and every unlawful act of defendant Golden as set forth above.

44. Upon information and belief defendant Golden acted in accordance with the policies, practices, customs, and usages established by defendants Rosengart and RCDSS.

45. Upon information and belief, defendant RCDSS has a policy and practice of wrongfully using legitimate legal processes to achieve illegitimate collateral objectives.

46. Upon information and belief, defendant RCDSS failed to properly train and/or supervise defendant Golden.

## DAMAGES

47. Plaintiff DM was wrongfully and forcefully removed from the loving care of his parents without his consent nor the consent of his plaintiff-parents.

48. Plaintiff DM was subjected to extreme emotional distress as exhibited by his wailing, crying, and reaching out for his parents during these unpleasant experiences.

49. Plaintiff DM was conscious of his seizure during the approximately 3 days and 3 nights that he was placed in the custody of total strangers, as shown by his wailing, crying, and reaching out for his parents during these unpleasant experiences.

50. Plaintiff DM suffered, and still suffers significant pain, emotional, and mental distress and anguish as a result of the trauma of being wrongfully and forcefully separated from his parents and placed with total strangers for a period of approximately 3 days and 3 nights.

51. Plaintiffs McLoughlin and Mall were severely damaged emotionally and mentally, as they watched their three (3) month old only son, wrongfully and forcefully removed from their care and custody without their consent for 3 days and 3 nights.

52. Plaintiffs McLoughlin and Mall incurred significant attorney's fees and legal cost so as to successfully clear their name of the stigma of being wrongfully labeled "child abusers."

53. Against the consent of plaintiff DM's parents, and against the advice of plaintiff DM's treating physicians, defendants unjustifiably and unlawfully exposed plaintiff DM to harmful and unnecessary levels of radiation by ordering a CT Scan of plaintiff DM at the tender age of 3 months old.

54. Upon information and belief, plaintiff DM has suffered a long term disability as a result of defendants wrongfully exposing him to harmful and unnecessary levels of radiation by ordering a CT Scan of plaintiff DM at the tender age of 3 months old.

55. Plaintiffs McLoughlin and Mall have suffered, and continues to suffer significant pain, emotional and mental distress and anguish as a result of the trauma of the long term effects of defendants intentional and wrongful exposure of their 3 month old son to harmful and unnecessary levels of radiation by ordering a CT Scan contrary to the advice of the treating medical professionals.

## DEMAND FOR PUNITIVE AND OTHER DAMAGES

56. The actions and/or inaction of the individual defendants as described above were extreme, outrageous, and a shock to the conscience of a reasonable person and an award of punitive damages is appropriate.

57. As a direct and proximate result of the actions and/or inaction of these defendants, plaintiffs were harmed and suffered the following injuries and damages:

   i. Violation of their rights secured to them by the Constitution and Laws of the United States.

   ii. Physical pain and suffering;

   iii. Severe emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

   iv. Loss of liberty; and

   v. Attorney's fees and costs.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### 42 U.S.C. § 1983 FOURTH AMENDMENT SEZIURE
### MEDICAL EXAMINATION (CT SCAN) OF PLAINTIFF DM AT THE HOSPITAL
*(Against all defendants)*
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

58. Plaintiffs reassert and restate the allegations set forth in the preceding paragraphs as if fully set forth herein.

59. Plaintiffs McLoughlin and Mall have a protected liberty interest in directing the medical care of their child, plaintiff DM.

60. The CT Scan ordered by the defendants was a direct violation of plaintiffs' Due Process Rights.

61. Defendants acted without consent, without probable cause, and with no reasonable nor legal justification.

SECOND CAUSE OF ACTION:
42 U.S.C. § 1983 FALSE IMPRISONMENT OF PLAINTIFF DM
*(Against all defendants)*
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

62. Plaintiffs reassert and restate the allegations set forth in the preceding paragraphs as if fully set forth herein.

63. As alleged above, defendants intended to, and did in fact confine plaintiff DM in the hospital room and other hospital facilities and the foster home of a third party.

64. Plaintiff DM was conscious of his confinement, did not consent to it, and did not reasonably believe he was free to leave.

65. The confinement was in no way reasonable nor privileged.

THIRD CAUSE OF ACTION:
42 U.S.C. § 1983 FOURTH AND FOURTEENTH AMENDMENT UNLAWFUL SEZIURE AND REMOVAL OF PLAINTIFF DM FROM ADULT PLAINTIFFS' CARE
*(Against all defendants)*
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

66. Plaintiffs reassert and restate the allegations set forth in the preceding paragraphs as if fully set forth herein.

67. The integrity of the family unit is a constitutional right protected by the Due Process Clause of the Fourth and Fourteenth Amendment.

68. Pursuant to the Due Process guarantees under the Fourteenth Amendment, adult plaintiffs have a protected liberty interest in the uninterrupted care and custody of their children.

69. Child plaintiff has a protected liberty interest in the care and guidance of his parents.

70. Defendants deprived plaintiffs of their constitutional rights when defendants removed plaintiff DM from adult plaintiffs' custody and care.  The seizure had no lawful basis.  The seizure was endured for an unreasonable length of time and burdened plaintiff DM's interest in being in the care and custody of his parents.

71. Defendants were without consent, probable cause, court order, nor any belief that exigent circumstances or conditions presented a danger to plaintiff DM which would warrant such wanton violation of plaintiffs' constitutionally protected rights.

FOURTH CAUSE OF ACTION:
42 U.S.C. § 1983 EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT OF THE CHILD PLAINTIFF BY EXPOSING HIM TO CANCER- CAUSING RADIATION WITHOUT LEGAL OR MEDICAL JUSTIFICATION
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

72. Plaintiffs reassert and restate the allegations set forth in the preceding paragraphs as if fully set forth herein.

73. Defendants inflicted cruel and unusual punishment upon plaintiff DM, by requiring plaintiff DM to undergo a potentially cancer-causing medical procedure without the consent of the adult plaintiffs, and without legal or medical justification.

FIFTH CAUSE OF ACTION:
42 U.S.C. § 1983 ABUSE OF PROCESS
DEFENDANTS FILED "INDICATED REPORTS" AGAINST PLAINTIFFS WITHOUT LEGAL JUSTIFICATION
(Against all defendants)
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

74. Plaintiffs reassert and restate the allegations set forth in the preceding paragraphs as if fully set forth herein.

75. As alleged above, without legal justification nor for any legitimate purpose, defendants filed an "indicated report of child abuse" against the adult plaintiffs with the New York Statewide Child Abuse Registry.

76. Upon information and belief, defendants' use of this civil process was without probable cause, was ill-motivated, and/or was done with gross negligence.

77. The proceeding ensuing therefrom ultimately terminated in plaintiffs' favor.

SIXTH CAUSE OF ACTION:
42 U.S.C. § 1983 MALICIOUS PROSECUTION; DEFENDANTS FILED "INDICATED REPORTS" AGAINST PLAINTIFFS WITHOUT LEGAL JUSTIFICATION

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

78. Plaintiffs reassert and restate the allegations set forth in the preceding paragraphs as if fully set forth herein.

79. The Fourteenth Amendment confers upon the adult plaintiffs, a constitutional right to the protection of their liberty interest without interference from the State except upon sufficient justifiable legal grounds.

80. Defendants violated adult plaintiffs' Fourteenth Amendment liberty interest when they, without legal justification filed "indicated reports" of child abuse against the adult plaintiffs with the New York Statewide Child Abuse Registry.

81. These actions were taken by the defendants without probable cause and/or without any reasonable ground.

82. The proceeding to amend the "indicated report" terminated in the favor of the plaintiffs.

SEVENTH CAUSE OF ACTION:
42 U.S.C. EQUAL PROTECTION
(against all defendants)

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

83. Plaintiffs reassert and restate the allegations set forth in the preceding paragraphs as if fully set forth herein.

84. Defendants intentionally discriminated against plaintiffs Mall and DM on the basis of their race, color, and/or religion.

85. Upon information and belief, defendants would not have seized nor "indicated" a similarly situated White/Caucasian child.

### EIGHTH CAUSE OF ACTION:
### 42 U.S.C. § 1983  FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS INTERFERENCE WITH PLAINTIFFS' PARENT/CHILD RELATIONSHIP
(Against all defendants)

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

86. Plaintiffs reassert and restate the allegations set forth in the preceding paragraphs as if fully set forth herein.

87. As alleged above, the acts of the defendants were intended to, and did deprive plaintiffs of their substantive due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution.

88. At the bare minimum, defendants acted with deliberate indifference as it relates to the harm caused by their unlawful interference with plaintiffs' parent/child relationship.

89. These deprivations were so egregious, outrageous, arbitrary, and were a disgraceful gross abuse of governmental authority that shocks the conscience.

90. All of the causes of actions herein complained of were taken under color of state law, in violation of 42 U.S.C. § 1983, and violated plaintiffs' rights as guaranteed by the United States Constitution and other Federal Laws.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Honorable Court grant their demand for judgment against the defendants, jointly and severally, for the following reliefs:

91. A judgment in favor of the plaintiffs for each and every cause of action against all the defendants, for fair and reasonable compensatory damages in an amount to be determined by a jury.

92. A judgment in favor of the plaintiffs against all individual defendants for punitive damages in an amount to be determined by a jury.

93. A monetary award for attorney's fees, costs, and disbursements for this action pursuant to 42 U.S.C. § 1988.

94. All other such and further relief as to this Honorable Court may seem just and proper.

Dated: April 19, 2018
      Albany, New York

                                                LAW OFFICE OF VINCENT U. UBA

By: _____
                                Vincent U. Uba, Esq.,
                                *Attorney for plaintiffs*
                           750 Broadway, Albany, NY 12207
                                    Tel: 518-533-4943

State of New York           }
                            }ss
County of Albany            }


WILLIAM McLOUGHLIN, being duly sworn, says that he is the plaintiff herein; that he has read the foregoing VERIFIED COMPLAINT, and knows the contents thereof to be true, except as to those matters therein stated to be alleged upon information and belief, and that as to those matters he believes them to be true.

*William J. McLoughlin*
WILLIAM McLOUGHLIN

Subscribed and Sworn to before me
this 13th day of April, 2018

_____
NOTARY PUBLIC

VINCENT UCHENNA UBA
NOTARY PUBLIC STATE OF NEW YORK
ALBANY COUNTY
LIC. #02UB6221465
COMM. EXP. 05/03/2018

State of New York           }
                            }ss
County of Albany            }

SOVAIRA MALL, being duly sworn, says that she is the plaintiff herein; that she has read the foregoing VERIFIED COMPLAINT, and knows the contents thereof to be true, except as to those matters therein stated to be alleged upon information and belief, and that as to those matters she believes them to be true.

_____
SOVAIRA MALL

Subscribed and Sworn to before me
this 13 day of April, 2018

_____
NOTARY PUBLIC

VINCENT UCHENNA UBA
NOTARY PUBLIC STATE OF NEW YORK
ALBANY COUNTY
LIC. #02UB6221465
COMM. EXP. 05/05/2018